**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:26-cv-80810-EA**

RABIDEAU KLEIN, P.A.,

Plaintiff,

v.

FIRST HORIZON BANK,

Defendant.

______________________________________ /

**DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Defendant, First Horizon Bank ("First Horizon"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby respectfully requests this Court dismiss Counts II, III, and IV of the Complaint for Damages (the "Complaint") filed by Plaintiff, Rabideau Klein, P.A. ("Plaintiff" or "RKPA"). In support, First Horizon states as follows:

## I. PRELIMINARY STATEMENT

This case arises not from any failure by First Horizon, but from a criminal fraud that exploited security breakdowns within the RKPA law firm. As Plaintiff's Complaint establishes, a threat actor (referenced in the Complaint as "Threat Actor") penetrated the firm's internal email system through a phishing scam to which Plaintiff fell victim, convinced the firm's telephone service provider to redirect the firm's phone lines, and then used those compromised channels to impersonate the firm's principal and access its First Horizon bank account to initiate fraudulent wire transfers. (ECF No. 1-1, ¶¶ 1, 51-54.) Yet, as the Complaint establishes, Plaintiff had previously declined First Horizon's recommendation to use dual-approval controls for wire transfers, expressly acknowledging in writing the increased risk of that choice. (*Id.* at ¶ 32; Ex. 2.)

Plaintiff now asks this Court to hold First Horizon liable for a fraud that Plaintiff's own security failures and voluntary choices caused.

Plaintiff's Complaint is fatally deficient in three of its four counts, and each should be dismissed with prejudice: Count II purports to state a cause of action for breach of an implied-in-fact contract, but such a theory is barred by Article 4A of Florida's Uniform Commercial Code ("UCC") and by the existence of express written agreements governing the same subject matter; Count III asserts breach of contract, but it is likewise preempted by the UCC; and Count IV is similarly preempted by the UCC, alleges duties that do not exist under Florida law, and is squarely barred by the well-recognized independent tort doctrine. None of these defects are curable by amendment and so dismissal with prejudice is appropriate.[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the Complaint, Plaintiff is a Florida law firm that maintains an attorney trust account (the "RKPA Bank Account") at First Horizon. (ECF No. 1-1, ¶¶ 1, 10-11.) On or about April 18, 2023, Plaintiff executed a Treasury Management Services Authorization and Consent form (the "Services Authorization") and a Treasury Management Product Enrollment Form. (ECF No. 1-1, ¶¶ 27-33.) The Services Authorization, attached to the Complaint as Exhibit 1, expressly provides that "Client hereby agrees to be bound by the TM Service Agreement," defined therein

---

[1] First Horizon is moving to dismiss Counts II, III, and IV of the Complaint. Federal courts in Florida have frequently recognized that a partial motion to dismiss extends the time to answer the unchallenged claim until after the court has ruled on the partial motion to dismiss. *See, e.g.*, *Beaulieu v. Bd. of Trs. of Univ. of W. Florida*, No. 3:07cv30/RV/EMT, 2007 WL 2020161, at *2 (N.D. Fla. July 9, 2007); *Ferk v. Mitchell*, No. 14–cv–21916, 2014 WL 7369646, at *1 n.1 (S.D. Fla. Dec. 29, 2014); *Taylor v. Pekerol*, No. 5:14–cv–96–RH–GRJ, 2016 WL 7985259, at *1 (N.D. Fla. Mar. 10, 2016) (compiling case law); *Jacques v. First Liberty Ins. Corp.*, No. 8:16-cv-1240-T-23TBM, 2016 WL 3221082, at *1 (M.D. Fla. June 9, 2016); *Dimension Leasing, Inc. v. Variety of Children's Hosp.*, No. 05-22701-CIV-UNGARO-BENAGES, 2006 WL 8432710, at *1 (S.D. Fla. Jan. 23, 2006). First Horizon respectfully requests that the time for it to respond to Count I of the Complaint be stayed and extended until after this Court's entry of an order on this Motion.

as the Treasury Management Services Master Agreement ("TMSMA"), and states that the "Enrollment Form, the TM Service Agreement and all amendments and addenda thereto, are incorporated herein and deemed part of this Master Agreement." (ECF No. 1-1, Ex. 1.) Plaintiff further alleges that following execution of these documents, it "continued to operate its law practice and send wire transfers as it previously did, using Defendant's online banking platform." (ECF No. 1-1, ¶ 33.)

Critically, Plaintiff's own Complaint reveals that this fraud originated within the firm's systems. On or about January 27, 2026, Plaintiff received a phishing email containing a falsified SharePoint link, which allowed the Threat Actor to gain unauthorized access to one of Plaintiff's Microsoft 365 email accounts. (ECF No. 1-1, ¶ 51.) The following day, the Threat Actor called Sangoma, Plaintiff's VoIP service provider, and—without providing any nonpublic information for verification—convinced Sangoma to forward Plaintiff's telephone lines to the Threat Actor's own telephone number. (*Id.* at ¶ 53.) Having compromised both Plaintiff's email and telephone systems, the Threat Actor then used First Horizon's self-service password reset process to reset the password for Guy Rabideau's account, during which process the Threat Actor obtained RKPA principal Guy Rabideau's User ID and ultimately obtained a new RSA token by providing basic information. (*Id.* at ¶¶ 54-62.) The bad actor then initiated fourteen wire transfers (thirteen of which were released) totaling approximately $17,276,700 (*Id.* at ¶ 63.) Approximately $10,729,929.79 has been recovered, leaving approximately $6,546,770.21 outstanding. (*Id.* at ¶ 72.)

Plaintiff's exposure was compounded by its own election to forego basic security controls recommended by First Horizon. The Enrollment Form attached to the Complaint as Exhibit 2 contains a "Dual Approval Opt Out" section in which Plaintiff, "[d]espite the recommendation of Bank," elected single-user approval for User Management, ACH transactions, and wire

transactions. (ECF No. 1-1, ¶ 32; Ex. 2.) In doing so, Plaintiff expressly agreed that the single-user approval procedure was "commercially reasonable" in the context of its operations, acknowledged that "having only one user for entitlements or transactions may increase the risk of loss," and "release[d] Bank from any responsibility or liability for same." (*Id.*, Ex. 2.)

The Complaint contains four counts. Count I alleges a violation of Florida Statutes Chapter 670 (UCC Article 4A). (*Id.* at ¶¶ 78-92.) Count II alleges breach of an implied-in-fact contract premised on duties that Plaintiff contends arise from "the circumstances" and "the parties' conduct." (*Id.* at ¶¶ 93-98.) Count III, pled in the alternative to Count II, alleges breach of contract based on the Treasury Management Services Master Agreement ("TMSMA")[2] and Depositor Agreement. (*Id.* at ¶¶ 99-103.) Count IV asserts a negligence claim, which is premised entirely on alleged conduct arising from and within the scope of the parties' banking relationship and the processing of wire transfers. (*Id.* at ¶¶ 104-111.)

## III. ARGUMENT AND MEMORANDUM OF LAW

### A. Standard of Review.

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Although a complaint challenged by an opposing party need not contain detailed factual allegations, a plaintiff must provide the "grounds"

[2] The TMSMA is attached hereto as **Exhibit "A."** With Rule 12(b)(6) decisions, the Eleventh Circuit has adopted the "incorporation by reference" doctrine, "under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. 'Undisputed' in this context means that the authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (internal citations omitted). Here, Plaintiff's breach of contract claim arises directly from the terms of the TMSMA, making the TMSMA central to Plaintiff's claim under *Horsley*.

for his entitlement to relief, amounting to more than a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court's analysis is generally limited to the four corners of a complaint and the attached exhibits. *Grossman v. Nationsbank,* 225 F.3d 1228, 1231 (11th Cir. 2000). However, a court may consider records outside the four corners of the complaint if they are central to plaintiff's claims and of undisputed authenticity. *See Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005). Documents need not be physically attached to a complaint to be incorporated by reference. *Id.*

A court must also accept a plaintiff's well-pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Caravello v. Am. Airlines, Inc.,* 315 F.Supp.2d 1346, 1348 (S.D. Fla. 2004) (internal citations omitted). Ultimately, the court must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint can only survive a Rule 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly,* 550 U.S. at 555. Lastly, a plaintiff will generally be allowed to amend their complaint once as a matter of course. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); *Sigler v. Bradshaw*, No. 13-90783-CIV, 2015 WL 1044175, at *4 (S.D. Fla. Mar. 10, 2015). However, no leave to amend need be granted if amendment would be futile and would not serve to cure the defective pleading. *Id.*

**B. <u>Plaintiff Cannot State a Valid Claim for Breach of Implied-in-Fact Contract</u>.**

Count II alleges that First Horizon breached an implied-in-fact contract by purportedly failing to implement commercially reasonable security procedures, authenticate callers, execute wire transfers only on verified payment orders, monitor for fraud indicators, and protect

confidential customer information. (ECF No. 1-1 ¶¶ 93-98.) This claim fails for two reasons: (1) it is preempted by UCC Article 4A; and (2) an implied-in-fact contract theory cannot lie where express written agreements cover the same subject matter.

**1. Plaintiff's Implied-in-Fact Contract Claim is Preempted by UCC Article 4A.**

To the extent Plaintiff's implied-in-fact contract claim is premised on any alleged failure of First Horizon to implement commercially reasonable security procedures, properly identify individuals who request the reissuance of RSA tokens, or to execute only properly verified and authorized wire transfers, such a claim clearly arises from the processing of wire transfers. As a matter of law, Florida's version of UCC Article 4A preempts Plaintiffs' contractual claim. (ECF No. 1-1, ¶ 96.)

Article 4A of the UCC is codified in Florida as Fla. Stat. §§ 670.102, *et. seq.* Article 4A is meant to be an "exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the article." Fla. Stat. § 670.102 cmt; *Warren Fin., Inc. v. Barnett Bank of Jacksonville, N.A.*, 552 So. 2d 194, 197 (Fla. 1989). "'The legislative intent reflected here is that carefully drafted provisions ... are not to be side-stepped when convenient by reference to other sources of law.'" *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1275 (11th Cir. 2003) (quoting *Sheerbonnet, Ltd. v. Am. Express Bank, Ltd.*, 951 F. Supp. 403, 408 (S.D.N.Y. 1995)). "The rules that emerged during the drafting of the U.C.C. 'are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties *in any situation covered by particular provisions of the Article.*'" *Regions Bank*, 345 F.3d at 1274 (emphasis added in original) (quoting UCC § 4A-102). In fact, "parties whose conflict arises out of a funds transfer should look first and foremost to Article 4A for guidance in bringing and resolving their claims[.]" *Id.* (citation omitted).

Thus, it is well recognized that common law claims arising out of fund transfers are preempted by the UCC and subject to dismissal. *See, e.g., Biondi v. Branch Banking & Tr. Co.*,No. 1:18-CV-22521-UU, 2019 WL 13217964, at *5 (S.D. Fla. Feb. 7, 2019) (holding common law claims preempted by Florida's UCC Article 4A); *Powis Parker, Inc. v. Truist Bank*, 654 F. Supp. 3d 1256, 1260 (M.D. Fla. 2023) (same); *Nice Weather Corp. v. Bank of Am., Nat'l Ass'n*, No. 23-24893-CIV, 2024 WL 3401595, at *2-3 (S.D. Fla. Feb. 5, 2024) (ruling on Florida law); *Kazak v. Truist Bank*, 692 F. Supp. 3d 1112, 1118 (M.D. Fla. 2023) (ruling on Florida law); *see also Barents Reinsurance SA v. Truist Bank*, No. 6:24-cv-591-ACC-UAM, 2025 WL 2223190, at *5 (M.D. Fla. Jan. 24, 2025) (ruling on Florida law) ("Article 4A preempts plaintiff's common law claims based on defendant's failure to prevent the fraudulent transfer and return of funds."); *Valdes v. Customers Bank*, No. 8:19-cv-02603-VMC-AEP, 2020 WL 13357817, at *4 (M.D. Fla. Feb. 10, 2020) (holding that UCC preemption applied to plaintiff's common-law claim based on defendant's failure to prevent the fraudulent transfer); *Corfan Banco Asuncion Para. v. Ocea Bank*, 715 So. 2d 967, 971 (Fla. 3d DCA 1998) (concluding that the plaintiff's common-law claims seeking a return of the transferred funds were preempted).

Here, many of Plaintiff's allegations of implied contractual duties are simply UCC Article 4A duties recast as duties under the purported "implied-in-fact contract." Specifically, Plaintiff alleges that First Horizon failed to implement commercially reasonable security procedures, authenticate persons requesting account access, execute wire transfers on properly verified payment orders, and refrain from executing wire transfers that are not authorized by RKPA. (ECF No. 1-1, ¶ 96.) These alleged breaches only concern the mechanics of the wire transfer at issue. Thus, as a matter of law, Plaintiff's claim for breach of these implied-in-fact duties is preempted by the UCC.

**2. An Implied-in-Fact Contract Cannot Lie Where Express Written Agreements Cover the Same Subject Matter.**

It is a well-established principle of Florida law that an implied-in-fact contract claim cannot be used to circumvent an express agreement that covers the same subject matter. *See, e.g., Shamy v. Shovel Ready Projects, LLC*, 433 So. 3d 798 (Fla. 4th DCA 2026), *reh'g denied*, No. 4D2026-XXXX (Fla. 4th DCA 2026), *dismissed sub nom*. *Shovel Ready Projects, LLC v. Shamy*, No. SC2026-0903, 2026 WL 1766015 (Fla. June 19, 2026) (finding the trial court erred in awarding recovery on an unjust enrichment count, because "[a] party cannot pursue an implied contract theory, such as unjust enrichment, if an express contract exists concerning the same subject matter."); *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.").

The Complaint itself states that Plaintiff executed the Treasury Management Services Authorization and Consent form (i.e., the Services Authorization) and the Treasury Management Product Enrollment Form on April 18, 2023. (ECF No. 1-1, ¶¶ 27-28.) The Services Authorization, which Plaintiff attached to the Complaint as Exhibit 1 and bears Guy Rabideau's signature, expressly provides that, "Client hereby agrees to be bound by the TM Service Agreement," defined therein as the Treasury Management Services Master Agreement (i.e., the TMSMA), and further states that "[t]he Enrollment Form, the TM Service Agreement and all amendments and addenda thereto, are incorporated herein and deemed part of this Master Agreement." (ECF No. 1-1, Ex. 1.) Plaintiff thus contractually agreed to be bound by the TMSMA when it signed the Services Authorization.

Moreover, even independent of the Service Authorization's express incorporation language, the TMSMA itself provides that "the use of a Service shall, without any further action

or execution of any documentation on the part of Client, constitute Client's acceptance of this Agreement and all terms and conditions governing the use of such Service." (TMSMA § 2.) Plaintiff's own Complaint alleges that "[s]ubsequent to RKPA's execution of the Services Authorization and Enrollment Form, RKPA continued to operate its law practice and send wire transfers as it previously did, using Defendant's online banking platform." (ECF No. 1-1, ¶ 33.) This is an admission of exactly the conduct that constitutes acceptance of the TMSMA under its terms. Plaintiff cannot simultaneously plead that it used First Horizon's wire transfer services for years and disclaim the governing agreement for those services.

The TMSMA comprehensively addresses the very subject matter Plaintiff seeks to cover through its implied-in-fact contract theory, including security procedures (TMSMA § 6), client internal security controls (TMSMA § 7), confidential information (TMSMA § 12), and First Horizon's duties and limitations of liability (TMSMA § 14). Because these express written terms exist covering the same subject matter as those services contemplated in Plaintiff's purported implied-in-fact contract (i.e., the wire transfer services, security procedures, and banking relationship), Plaintiff cannot maintain an implied-in-fact contract theory, and Count II should be dismissed with prejudice.

**C. <u>Plaintiff's Breach of Contract Claim is Preempted by UCC Article 4A</u>.**

Count III, pled in the alternative to Count II, alleges breach of the TMSMA and Depositor Agreement. Specifically, Plaintiff alleges First Horizon breached TMSMA § 12 (confidentiality), TMSMA § 4.1 (transmitting transfer requests), TMSMA § 3.2 and the Enrollment Form (enrollment in wire transfer service), and the Depositor Agreement's Confidentiality provision. (ECF No. 1-1, ¶¶ 99-103.) However, given that Plaintiff premises Count III on allegations concerning enrollment in the wire transfer service, transmission of transfer requests, and security

procedures for verification and authentication of wire transfers, these claims clearly arise from the processing of wire transfers, and are therefore preempted by Article 4A for the same reasons set forth above in Section III.B.1. *See Regions Bank*, 345 F.3d at 1274-75 ("[P]arties whose conflict arises out of a funds transfer should look first and foremost to Article 4A for guidance in bringing and resolving their claims[.]"). Furthermore, to the extent Plaintiff's breach of contract claim relies on the confidentiality provisions of the TMSMA or Depositor Agreement, those allegations are inextricably intertwined with the wire transfer fraud at issue and cannot be severed from the Article 4A framework. Thus, Count III should be dismissed with prejudice.

**D. <u>Plaintiff Fails to State a Claim for Negligence</u>.**

Plaintiff has also brought a negligence claim, alleging that First Horizon owed a duty to exercise reasonable care in authenticating callers, implementing commercially reasonable security procedures, monitoring for indicators of fraud, refraining from executing wire transfers with apparent fraud indicators, protecting confidential customer information, and properly training and supervising employees. (ECF No. 1-1, at ¶ 105.) However, Plaintiff's negligence claim fails as a matter of law for three independent reasons: (1) this claim is preempted by the UCC; (2) Plaintiff alleges duties that do not exist under Florida law; and (3) the claim is barred by the independent tort doctrine. Accordingly, Count IV of the Complaint should be dismissed with prejudice.

"To state a negligence claim under Florida law, a plaintiff 'must allege four elements: a duty, breach of that duty, causation, and damages.'" *RV Kountry v. Truist Bank*, No. 2:24-CV-0036-JLB-NPM, 2025 WL 744271, at *5 (M.D. Fla. Mar. 7, 2025) (quoting *Virgilio v. Ryland Grp.*, Inc., 680 F.3d 1329, 1339 (11th Cir. 2012)). "The duty element of negligence is a threshold legal question; if no legal duty exists, then no action for negligence may lie." *Id.* (quoting *Jenkins v. W.L. Roberts, Inc.*, 851 So. 2d 781, 783 (Fla. 1st DCA 2003)).

As an initial matter, Plaintiff's negligence claim fails because it is preempted by Florida's Article 4A. The Eleventh Circuit has recognized that Article 4A is "intended to be the **exclusive means** of determining the rights, duties and liabilities of the affected parties in any situation covered by the particular provisions of the Article" and held that "**resort[ing] to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in Article 4A**." *Regions Bank*, 345 F.3d at 1274-75 (emphasis added).

Florida courts have made clear that Article 4A preempts common law claims involving allegations of unauthorized wire transfer requests. *See, e.g., Capten Trading Ltd. v. Banco Santander Int'l*, No. 17-20264-CIV, 2018 WL 1558272, at *4 (S.D. Fla. Mar. 29, 2018) ("At bottom, all of Capten's common-law claims rest on Capten's allegations that the Bank mishandled unauthorized wire transfer requests. As such, the Court finds Article 4A provides the exclusive remedy to address Capten's claims."); *List Indus, Inc. v. Wells Fargo Bank, N.A.*, No. 17-CV-61204, 2018 WL 4334876, at *4-5 (S.D. Fla. Sept. 11, 2018) (allegations that duties breached by a bank's allegedly failing to notice and stop money laundering were preempted as "Plaintiff's claim rests solely on allegations related to the unauthorized transactions").

Plaintiff's negligence allegations cannot avoid Article 4A preemption. Plaintiff's conclusory allegations regarding the bank's alleged response to suspected or known fraudulent activity are devoid of the kind of wholly separate transactions or promises that Florida courts have found necessary to move a case outside of UCC Article 4A and its controlling provisions regarding unauthorized funds transfers. *Compare, e.g.*, *Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1357-58 (S.D. Fla. 2015) (holding that claims that stemmed from allegedly allowing accounts to be opened in the plaintiffs' names with forged signatures and/or improper authorization

or identification were not preempted), *with Biondi*, 2019 WL 13217964, at *5 (allegations of failures to verify changes to account parameters and allowing improper access were insufficient to avoid preemption, as they were "devoid of allegations that a third party fraudulently opened an account in Plaintiffs' name" and were "[a]t its core…allegations that BB&T was negligent in permitting unauthorized wire transfers") (compiling case law). Because Plaintiff has not alleged—and cannot allege—conduct outside the scope of the alleged unauthorized wire transfers, Count IV is preempted by the UCC and barred as a matter of law.

Moreover, even if Plaintiff's claim could survive preemption, it still would only be viable if a tort duty was owed and had been breached, which is plainly not the case. It is well recognized that a bank's duties and obligations do not include investigating fraud, monitoring accounts, or noticing or notifying a customer of fraudulent activity. *See, e.g.*, *RV Kountry v. Truist Bank*, No. 2:24-CV-0036-JLB-NPM, 2025 WL 744271, at *5 (M.D. Fla. Mar. 7, 2025) (noting that "[b]oth the Eleventh Circuit and the Florida Supreme Court agree that Florida law does not impose a duty on a bank to investigate fraudulent transactions" and rejecting claims that duties exist to maintain, protect and secure a customer's private and financial information); *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012) ("Although Plaintiffs alleged the transactions were atypical and therefore Bank of America should have known of the Ponzi scheme, such allegations are insufficient under Florida law to trigger liability. Florida law does not require banking institutions to investigate transactions."); *Lynne M. Bucklin v. Bank of Am., N.A.*, No. 2:24-CV-278-JLB-NPM, 2025 WL 1504043, at *9 (M.D. Fla. Mar. 11, 2025) ("But, even though the allegations are separate and distinct, Florida law does not impose a duty on banks to investigate transactions."); *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 548-49 (Fla. 2d DCA 2003) ("When one establishes a bank account, the bank is obligated to deposit legal transfers into the account and to honor checks

and other usual debits against the account. We would radically alter the law of banking if we required banks to review credit card accounts and checking accounts to make certain that their customers were spending their money wisely."); *Cheese & Grill Rest., Inc. v. Wachovia Bank, N.A.*, 970 So. 2d 372, 375 (Fla. 3d DCA 2007) ("As in so many defalcations, the bank and its computers merely processed the checks provided to them by the embezzler, and there is no indication that anyone with either bank could or should have detected the scheme. Absent extraordinary circumstances that were not established here, Florida's Uniform Commercial Code and bank-customer agreements place the burden of reviewing statements and controlling the transmittal of signed checks upon the customer.").

Lastly, the independent tort doctrine bars a plaintiff from litigating contractual claims via a tort cause of action. *See, e.g., Elec. Sec. Sys. Corp. v. S. Bell Tel. And Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("Since a breach of contract, alone, cannot constitute a cause of action in tort, the trial court properly dismissed the negligence count. It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence.") (internal citation omitted); *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239-1240 (Fla. 3d DCA 2020) ("It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract."); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1318 (S.D. Fla. 2014) ("Fundamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations.") (quoting *Freeman v. Sharpe Res. Corp.*, No. 6:12-cv-1584, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013)); *see also Dickson v. Wells Fargo Bank, N.A.*, No. 25-80095-CIV, 2025 WL 1517528, at *5 (S.D. Fla. May 16, 2025) (holding that the independent tort doctrine

barred negligence claims against a bank for failure to maintain account privacy and security, allowing unauthorized access and transfers, and failing to recognize red flags). Duties with respect to an account arise from the contractual relationship between the parties. *See McCrory Stores Corp. v. Tunnicliffe*, 140 So. 806, 807 (Fla. 1932); *MJZ Corp. v. Gulfstream First Bank & Tr., N.A.*, 420 So. 2d 396, 397 (Fla. 4th DCA 1982); *ReneG Corp v. JPMorgan Chase Bank, N.A.*, No. 25-CV-20595, 2025 WL 2239263, at *4-5 (S.D. Fla. Aug. 6, 2025).

As found by this Court in *Dickson v. Wells Fargo Bank, N.A.*, 812 F. Supp. 3d 1281 (S.D. Fla. 2025):

> Plaintiff's repleaded negligence claim again runs afoul of these principles. In Count I, Plaintiff alleges that Wells Fargo "owed a duty to Plaintiff, as its customer, to provide a commercially reasonable security method against unauthorized payment orders". "[T]he relationship between a bank and its depositing customer is contractual." *MJZ Corp. v. Gulfstream First Bank & Tr., N. A.*, 420 So. 2d 396, 397 (Fla. Dist. Ct. App. 1982) (citation omitted). Just as in his Initial Complaint, Plaintiff's negligence allegations in the SAC still stem from Wells Fargo's "contractual duties to its depositor". **Thus, Plaintiff's negligence claim alleges duties based upon Plaintiff's contractual customer relationship with Wells Fargo instead of any independent tortious conduct, so Plaintiff's negligence claim is again barred under the independent tort doctrine**.

*Id.* at 1286-87 (internal citations omitted and emphasis added) (also finding that allegations that the bank failed to initiate and complete error resolution investigations following the loss were "predicated entirely on Plaintiff's relationship to Wells Fargo as its customer, which is once again a contractual relationship").

The weight of the authority recognizes that a bank does not have a general duty under Florida law to monitor its customers' accounts to prevent fraud or take certain actions once fraud is discovered. Courts have made clear that duties with respect to an account arise from and are predicated on the parties' contractual relationship. Plaintiff acknowledges and pleads a contractual relationship with First Horizon, referencing its original agreements with Lyndian Private Bank and

Iberia, which were converted into First Horizon commercial banking accounts. (ECF No. 1-1, ¶¶ 14-19.) In summary, Plaintiff attempts to allege negligence by First Horizon within the scope of the Parties' banking relationship while also alleging that it entered express written agreements with respect to the same subject matter concerning its bank accounts. It cannot have it both ways. Indeed, as discussed above in Section III.B.2., the TMSMA, by which Plaintiff agreed to be bound through its signed Services Authorization, comprehensively allocates security obligations between the parties.

Like the numerous cases discussed above, Plaintiff impermissibly attempts to impose duties on First Horizon that Florida law does not recognize and could only arise from and within the scope of the Parties' contractual relationship. That relationship is the source of any duties owed by First Horizon to Plaintiff, and Plaintiff's Complaint is devoid of any independent duty that could support a standalone tort claim. For these reasons, Plaintiff has failed to allege a viable duty to sustain a negligence claim, and, even if such duties existed, they would be barred by the independent tort doctrine.

Ultimately, Plaintiff's Count IV tracks the problems identified in *Biondi*, in which the Court concluded:

> But under any theory of negligence that the Court can distill from the amended complaint, it fails. As BB&T rightly notes, to the extent Plaintiffs' negligence argument can be construed as asserting that BB&T breached a duty to follow its own internal procedures, no such duty exists. If, as Plaintiffs seem to assert in their response, their claim is that BB&T breached a duty of ordinary care under Florida common law, such a claim is preempted by Florida's UCC. If Plaintiffs' (sic) seek to assert that BB&T breached a duty of ordinary care under Florida's UCC, they have pled no factual support for such a claim. And Plaintiffs' new allegations asserting that BB&T failed to verify account changes is merely a rehashing of its previously dismissed breach of the duty to monitor claim.

*Biondi*, 2019 WL 13217964, at *3. For the same reasons, Count IV must also be dismissed with prejudice.

## IV. CONCLUSION

It is Plaintiff's duty to plead a valid and plausible cause of action upon which this Court could grant relief, and Counts II-IV of the Complaint fail to do so. Plaintiff's Count II is barred by preemption and by the existence of express written agreements; Count III is barred by preemption; and Count IV is barred by preemption, the lack of an actionable duty under Florida law, and by the independent tort doctrine given the express written agreements. Because each of these deficiencies is legal in nature and not curable by additional factual allegations, amendment would be futile, and Counts II, III, and IV of the Complaint should be dismissed with prejudice.

WHEREFORE, Defendant, First Horizon Bank, respectfully requests that this Court enter an order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing Counts II, III, and IV with prejudice, along with granting any and all additional relief this Court deems just and proper.

**No Certification Required Under Local Rule 7.1(a)(1)(3)**

As First Horizon is seeking partial dismissal for Plaintiff's failure to state a cause of action pursuant to Fed. R. Civ. P. 12(b)(6), no conference as to the requested relief is required pursuant to the Local Rules of this Court.

Submitted July 31, 2026.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
200 East Broward Blvd., Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 768-1600
Facsimile: (954) 333-3930
*Counsel for Defendant, First Horizon Bank*

By: */s/ David B. Levin*
David B. Levin
Florida Bar No.: 26394
*dlevin@bakerdonelson.com*
Aldo M. Leiva
Florida Bar No.: 116424
*aleiva@bakerdonelson.com*

Spencer D. Leach
Florida Bar No.: 110753
*sleach@bakerdonelson.com*
Kirstin M. Grice
Florida Bar No.: 1011793
*kgrice@bakerdonelson.com*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 31, 2026, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF System, which will send notice to all parties of record, including, but not limited to, the following:

Anthony R. Yanez, Esq.
**Hodgson Russ LLP**
440 Royal Palm Way, Suite 202
Palm Beach, Florida 33480
ayanez@hodgsonruss.com
abard@hodgsonruss.com
courtmail@hodgsonruss.com
*Counsel for Plaintiff*

*/s/ David B. Levin*