**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 9:26-CV-80810-EA**

---

RABIDEAU KLEIN, P.A.,

Plaintiff,

v.

FIRST HORIZON BANK,

Defendant.

---

# PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

**HODGSON RUSS LLP**
*Attorneys for Plaintiff Rabideau Klein, P.A.*
Anthony R. Yanez
Patrick E. Fitzsimmons (*pro hac vice*)
440 Royal Palm Way, Suite 202
Palm Beach, Florida 33480
(561) 656-8017
*ayanez@hodgsonruss.com*
*pfitzsimmons@hodgsonruss.com*

Plaintiff, Rabideau Klein, P.A. ("RKPA"), responds to and opposes Defendant First Horizon Bank's ("First Horizon") partial motion to dismiss (DE No. 7) (the "Motion") and states as follows:

## I. PRELIMINARY STATEMENT

On January 29, 2026, $17,276,700 was stolen from RKPA's attorney trust bank account at First Horizon when a bad actor sent thirteen unauthorized wire transfers (the "Fraudulent Wire Transfers"). First Horizon's failures allowed this to happen. At issue on this Motion, however, is not the mechanics of how First Horizon executed those Fraudulent Wire Transfers, or whether First Horizon acted in good faith and in compliance with a commercially reasonable security procedure when it did. Those issues are governed by Article 4A of Florida's Uniform Commercial Code ("Article 4A") and relate to Count I of the complaint, which First Horizon did not move against. At issue here are First Horizon's other failures, including its disclosure of RKPA's confidential information and its substandard online banking platform which the bad actor exploited to accomplish his theft. It is these failures—independent of First Horizon's execution of the Fraudulent Wire Transfers—that form the basis for RKPA's common law claims, which First Horizon moved to dismiss.

Despite not moving against RKPA's Article 4A claim (Count I), First Horizon seeks to improperly use Article 4A as a shield. Cherry-picking language from the complaint, the Motion lumps together RKPA's allegations, broadly labels them "Article 4A," and then asks the Court to dismiss on that basis. The Motion also ignores facts clearly alleged in the complaint, cites inapplicable case law, and obfuscates a factual dispute about the applicability and operative effect of an unsigned banking agreement. None of this is permissible, especially on a motion to dismiss, where all well-pled facts are accepted as true and construed in RKPA's favor.

None of RKPA's common law claims are preempted by Article 4A. RKPA's claim for breach of implied-in-fact contract (Count II) and its claim for breach of contract (Count III)—properly pled in the alternative—both arise from First Horizon's mishandling and disclosure of RKPA's confidential customer information, its maintenance of a substandard online banking platform, and its failure to protect the RKPA Bank Account from fraudulent access. Neither claim arises from how First Horizon executed the Fraudulent Wire Transfers. In addition, discovery is necessary to determine whether the unsigned banking agreement First Horizon attaches to its Motion is even binding and operative. RKPA's complaint expressly alleges it is not, and this factual dispute cannot be resolved on a motion to dismiss.

RKPA's negligence claim (Count IV) is likewise not preempted by Article 4A, nor is it barred by the independent tort doctrine. First Horizon markets itself to customers as having secure systems, that it monitors online banking data to protect customer accounts from unauthorized access, and that its employees recognize customer voices and know their business practices to prevent fraud on customer accounts. RKPA's allegations demonstrate how each of these representations failed and led directly to RKPA's damages. For instance, First Horizon negligently maintained a substandard online banking platform that provided RKPA's User ID to a bad actor, it issued an RSA token to the bad actor after failing to properly verify him, and it allowed the bad actor hours of unfettered access to the RKPA Bank Account from unknown IP addresses where account changes were made. All of this occurred before First Horizon even received a payment order. In addition, after RKPA notified First Horizon that unauthorized wire transfers were occurring, First Horizon failed to act despite its employees telling RKPA the bank account was flagged for fraud. These failures, among others alleged in the complaint, establish RKPA's negligence claim, which is sufficiently pled and not preempted by Article 4A.

For these reasons, and as further explained below, First Horizon's Motion should be denied in its entirety.

## II. STATEMENT OF RELEVANT FACTS

### A. The RKPA Bank Account and First Horizon's False Claims of Security

RKPA's attorney trust bank account (the "RKPA Bank Account") was opened decades ago at Lydian Private Bank. RKPA Complaint, DE No. 1-1 ("Compl.") ¶ 14. The RKPA Bank Account was used in the operation of RKPA's legal practice. *Id.* ¶ 15. Following several mergers, First Horizon acquired the RKPA Bank Account from Iberiabank after they merged in 2020. *Id.* ¶ 16.

Although First Horizon acquired the RKPA Bank Account, and allowed RKPA to send wire transfers, it never enrolled RKPA in its wire transfer service. *Id.* ¶ 84. In fact, the only documents RKPA signed with First Horizon were a Treasury Management Services Authorization and Consent form (the "Services Authorization") and a Treasury Management Product Enrollment Form (the "Enrollment Form"), both of which were executed on April 18, 2023. *Id.* ¶¶ 27, 29. In the Enrollment Form, the only service RKPA enrolled in was Positive Pay, which is not a wire transfer service. *Id.* ¶ 31. First Horizon's Treasury Connect, Wire Transfer, and International Wire Transfer services were not selected. *Id*. RKPA signed no other documents, and the complaint expressly disputes the binding effect and operative nature of the unsigned Treasury Management Services Master Agreement ("TMSMA"), and the other unsigned agreements, that First Horizon recently provided to RKPA. *Id.* ¶ 76. Notably, the TMSMA was created in October 2024,[1] eighteen months after RKPA signed the Enrollment Form in April 2023. *Id.* ¶ 29.

---

1 The TMSMA bears a footer reading "REV 10/24" and a copyright notice reading "©2024 First Horizon Bank, Member FDIC." *See generally* Mot. Ex. A, DE No. 7-1.

First Horizon holds itself out as a financial institution that safeguards and protects customer information. Its website says it has "[f]irewalls [that] monitor all data traffic to and from First Horizon Bank, ensuring that only known users are able to gain access" to its online banking platform. Compl. ¶ 36. First Horizon further claims its employees recognize customer voices and watch patterns of business activity to prevent fraud. *Id.* ¶ 37. But these claims are untrue. In fact, First Horizon has a long history of security failures, including a very recent and shocking trend of near-identical security failures. In 2021, First Horizon had a data breach where customer log-in credentials were stolen, and customer funds diverted. *Id.* ¶ 41. In 2024, one of First Horizon's employees, a wire transfer administrator, provided confidential customer information to a third party who used that information to impersonate customers and initiate fraudulent wire transfers from customer accounts. *Id.* ¶ 42. Earlier this year, another First Horizon employee externally emailed a spreadsheet with approximately 4,000 rows of confidential customer information to another First Horizon customer who informed RKPA that RKPA's confidential information was included in that spreadsheet. *Id.* ¶ 43. First Horizon never notified RKPA that its confidential information was externally disclosed. *Id.*

Notably, numerous First Horizon customers recently experienced fraudulent wire transfer events from their accounts, resulting in multiple lawsuits pending against First Horizon alleging similar conduct. *See, e.g.*, *Nosich & Ganz, Attorneys at Law v. First Horizon Bank*, 26-CV-23804-KMW (S.D. Fla. 2026); *K&A Rosario Holdings LLC et al. v. First Horizon Bank,* 26-CV-01337 (M.D. Fla. 2026); *Home1st Lending, LLC et al. v. First Horizon Bank*, 26-CV-01477-CEM-NWH (M.D. Fla. 2026); *Electronic Maintenance Associates, Inc. et al v. First Horizon Bank Corp et al.*, 26-CV-03121-ELR (N.D. Ga. 2026). One of First Horizon's most glaring security failures, which directly contradicts its public claims of data security, is its online banking platform that does not

require multifactor authentication. Compl. ¶ 45. Through this substandard platform, a bad actor can both obtain a First Horizon customer's User ID and reset the account password with access only to an email, telephone number, or text message where a code is sent. *Id.* ¶ 46.

### B. First Horizon's Relevant Failures Separate from the Fraudulent Wire Transfers

On January 27, 2026, an unknown threat actor ("Threat Actor") gained unauthorized access to one of RKPA's email accounts through a phishing scheme. *Id.* ¶ 51. On January 28, 2026, the Threat Actor contacted RKPA's telephone provider to redirect RKPA's phone lines to the Threat Actor's own number. *Id.* ¶ 53. Also on January 28, the Threat Actor used First Horizon's substandard online banking platform to obtain Guy Rabideau's User ID, reset his password, and gain access to the RKPA Bank Account. *Id.* ¶ 54.

With access and control over the RKPA Bank Account, the Threat Actor called First Horizon, claimed he was Guy Rabideau, and requested a new RSA token. *Id.* ¶ 55. During this call, First Horizon representatives utterly failed to verify whether the caller was actually Guy Rabideau. First Horizon employees ignored the audible voice mismatch between Guy Rabideau and the Threat Actor, ignored that the Threat Actor referred to RKPA as "Rabideau Klein" when First Horizon's system reflects it as "Rabideau Law P.A.," ignored the Threat Actor's reference to the RKPA Bank Account number as "**<u>their</u>** bank account number," and relied on Guy Rabideau's User ID as a verification method when First Horizon itself provided that User ID to the Threat Actor. *Id.* ¶¶ 52, 55-59.

After failing to properly verify the caller, First Horizon issued a new RSA token to the Threat Actor who used it to make various changes to the RKPA Bank Account. *Id.* ¶ 61. For the next several hours, and into the early morning hours of January 29, 2026, First Horizon allowed

unfettered access to the RKPA Bank Account through its online banking platform. *Id.* ¶ 62. With this access, the Threat Actor, among other things: continuously logged in-and-out of Guy Rabideau's account from IP addresses never before associated with the RKPA Bank Account; changed David Klein's password to the RKPA Bank Account; logged in-and-out of David Klein's account from IP addresses never before associated with the RKPA Bank Account; modified Guy Rabideau's account establishing it as a mobile user; created a new User ID for Guy Rabideau with contact information naming an entirely different business; and disabled access to the RKPA Bank Account for all RKPA users. Compl. ¶ 62.

The Threat Actor then began initiating unauthorized wire transfers before the start of business on January 29. *Id.* By approximately 10:00 a.m. (EST) that day, RKPA noticed its employees were all locked out of First Horizon's online banking platform and could not access the RKPA Bank Account. *Id.* ¶ 68. RKPA immediately called First Horizon. *Id.* ¶ 69. First Horizon employees said First Horizon flagged the RKPA Bank Account for fraudulent activity, and RKPA employees then went in-person to the bank to speak further with them. *Id.* But First Horizon failed again. Despite knowing of the fraud by 10:00 a.m., and despite telling RKPA the RKPA Bank Account was flagged for fraudulent activity, First Horizon still executed the Fraudulent Wire Transfers that day, releasing $17,276,700 from the RKPA Bank Account. *Id.* ¶¶ 68-70. All Fraudulent Wire Transfers went to beneficiaries and geographic locations where RKPA never before wired funds. *Id.* ¶¶ 23-24. Over the next few months some funds were recovered but approximately $6,546,770.21 remains outstanding. *Id.* ¶ 72.

RKPA's complaint asserts four causes of action: a statutory claim under Article 4A (Count I, which is not challenged on this Motion); breach of implied-in-fact contract (Count II); breach of

contract, pled in the alternative to Count II (Count III); and negligence (Count IV). *Id.* ¶¶ 78-111. First Horizon moves to dismiss Counts II through IV only.

## III. ARGUMENT

### A. Rule 12(b)(6) Standard and First Horizon's Improper Motion Exhibit

A motion under Federal Rules of Civil Procedure ("Rule") 12(b)(6) tests the facial sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pled factual allegations as true and construe them, together with all reasonable inferences, in the light most favorable to the plaintiff. *Kazak v. Truist Bank*, 692 F. Supp. 3d 1112, 116 (M.D. Fla. 2023). A complaint requires only a short and plain statement of the claim, giving the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint survives so long as it states a claim to relief that is plausible on its face. *Id.* at 570. A plaintiff may plead claims in the alternative. Fed. R. Civ. P. 8(d)(2).

A court's review is generally confined to the four corners of a complaint and its attachments, but it may consider a document outside the complaint only where it is both central to the plaintiff's claim and of undisputed authenticity. *Kazak*, 692 F. Supp. 3d at 1117 (citation omitted). Here, First Horizon attaches an unsigned TMSMA to its Motion. *See* DE No. 7-1. RKPA's complaint expressly denies the TMSMA is binding or operative. *See, e.g.*, Compl. ¶ 76. Ignoring that fact, the Motion asks the Court to find it a binding agreement between the parties. *See, e.g.*, Mot. at 8-9, 15. But, because this is a motion to dismiss and its authenticity is in dispute, that request must be rejected.

The district court's analysis in *Kazak* is instructive. In *Kazak*, the court refused to consider account agreements attached to the bank's motion to dismiss because the plaintiff disputed they

were the operative agreements. *Kazak*, 692 F. Supp. 3d at 1117-18. The *Kazak* court also noted the agreements were unsigned and it was unclear when the plaintiff may have agreed to them. *Id.* Like *Kazak*, this Court should reject First Horizon's request to incorporate the unsigned and in-dispute TMSMA and deny all of First Horizon's arguments relying on it. *See also Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 09-CV-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. 2009) (rejecting defendant's exhibits because a motion to dismiss "is not a procedure for resolving factual questions or addressing the merits of the case").

**B. None of RKPA's Common Law Claims are Preempted by Article 4A**

First Horizon's preemption argument rests on an inflated reading of Article 4A already rejected by the Eleventh Circuit. In *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267 (11th Cir. 2003)—a summary judgment decision and one of First Horizon's leading cases—the Eleventh Circuit held that Article 4A is not the "exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer." *Id.* at 1274-75 (internal quotations and citations omitted). The drafters intended Article 4A to be "supplemented, enhanced, and in some places, superceded by other bodies of law. . . to synergize with other legal doctrines." *Id.* at 1275 (citation omitted). "[T]he only restraint on a plaintiff is that resort[ing] to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities *inconsistent* with those stated in this Article." *Id.* (internal quotations and citation omitted and italics in original). The Eleventh Circuit in *Regions Bank* further cautioned courts to remain mindful when interpreting Article 4A and considering preemption to avoid "produc[ing] absurd results" that would allow banks to use it "as a shield for fraudulent activity." *Id.* at 1276 (citation omitted). This rings true here, where First Horizon seeks to use Article 4A as a shield for its numerous failures unrelated to its processing of the payment orders associated with the Fraudulent Wire Transfers. In effect, First Horizon wants

the Court to provide it—on a motion to dismiss—absolution from its non-Article 4A failures simply because wire transfers ultimately occurred. This is not what the drafters of Article 4A intended.

First Horizon's own case law confirms this and is fatal to its preemption argument. In *Kazak*, the court denied a bank's motion to dismiss common law claims seeking damages related to fraudulent wire transfers because the complaint alleged wrongdoing that "extend[ed] beyond the passive mechanics of how a funds transfer was conducted." *Kazak*, 692 F. Supp. 3d at 1118. The Court in *Kazak* specifically cited that the plaintiff alleged facts concerning her notification to the bank that fraud was occurring, and that its employees told her they would lock the account to terminate the wires, but the bank failed to do so. *Id.* RKPA makes the same allegations here.

First Horizon's other citations also fail to support its preemption argument. For example, *Warren Financial, Inc. v. Barnett Bank of Jacksonville, N.A.*, 552 So. 2d 194 (Fla. 1989) predates Florida's adoption of Article 4A and addresses wrongful dishonoring of checks under different Articles of the UCC, not funds-transfer preemption under Article 4A. Similarly, *Valdes v. Customers Bank, Inc.*, 2020 WL 13357817, at *2-3 (M.D. Fla. Feb. 10, 2020), *Barents Reinsurance SA v. Truist Bank*, 2025 WL 2223190, at *3-4 (M.D. Fla. Jan. 24, 2025), *Powis Parker, Inc. v. Truist Bank*, 654 F. Supp. 3d 1256, 1259 (M.D. Fla. 2023), and *Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So. 2d 967, 968-69 (Fla. 3d DCA 1998) concern beneficiary misdescriptions in payment orders and the narrow automated-processing safe harbor in Florida Statutes § 670.207(2). These cases are factually inapposite and not instructive.

Equally inapplicable and distinguishable are *Nice Weather Corp. v. Bank of Am., Nat'l Ass'n*, No. 23-CV-24893, 2024 WL 3401595, at *2-3 (S.D. Fla. Feb. 5, 2024) and *Biondi v. Branch Banking & Tr. Co.*, No. 18-CV-22521, 2019 WL 13217964, at *5 (S.D. Fla. Feb. 7, 2019). In both

cases the common law claims alleged in the complaints clearly lacked allegations beyond generic mechanics of wire transfers. In *Nice Weather Corp.*, the complaint was five pages in total length with only seven short paragraphs of generic factual allegations referencing "unauthorized debits." *See Nice Weather Corp.*, 23-CV-24893 (S.D. Fla.) DE No. 1-2 (complaint attached to notice of removal). The complaint in *Biondi* was no better. It too was less than ten pages and described by the court as "completely unclear . . . requir[ing] all parties to speculate as to the very basis of the cause of action." *Biondi*, 2019 WL 13217964 at *7, n. 5; *see Biondi*, 18-CV-22521 (S.D. Fla.) DE No. 13 (amended complaint). While preemption was perhaps proper in *Nice Weather Corp*. and *Biondi*, neither case is instructive because RKPA's complaint contains substantive non-Article 4A allegations that were missing from the complaints in those cases. As described more fully below, RKPA's complaint alleges sufficient facts independent of the mechanics of the Fraudulent Wire Transfers. Consequently, none of RKPA's common law claims are preempted.

#### 1. Breach of Implied-in-Fact Contract (Count II) and Breach of Contract (Count III)

First Horizon seeks preemption of RKPA's two contract claims by generalizing the complaint's allegations and ignoring well-pled facts. First Horizon broadly claims that "many of Plaintiff's allegations of implied contractual duties are simply UCC Article 4A duties recast as duties under the purported 'implied-in-fact contract.'" Mot. at 7. First Horizon further claims that RKPA's breach of contract claim "clearly arise[s] from the processing of wire transfers, and [is] therefore preempted by Article 4A for the same reasons set forth above [relating to the implied-in-fact contract claim]." *Id.* at 10. These conclusory arguments are First Horizon's attempt to shield itself under Article 4A.

Under Florida law, the elements of breach of contract and breach of implied-in-fact contract are the same—existence of a contract, material breach, and damages—and "differ[] only in the parties' method of expressing mutual consent." *Yel Co. Insurance v. Truist Bank*, 25-CV-22365-DPG/DSW, 2026 WL 717175, at * 3 (S.D. Fla. Feb. 19, 2026) (citations omitted). RKPA's complaint alleges facts fully supporting both contract claims that are unrelated to the mechanics of the Fraudulent Wire Transfers. For example, and with respect to both contract claims, the complaint alleges First Horizon maintained a substandard and insecure online banking platform, disclosed RKPA's confidential information to another First Horizon customer and Guy Rabideau's User ID to the Threat Actor, utterly failed to verify the Threat Actor during a customer service call before issuing him an RSA token, and allowed the Threat Actor hours of unfettered access to the RKPA Bank Account where account changes were made. Compl. at ¶¶ 43, 46-49, 54-62. The difference between the two contract claims is that the implied-in-fact claim (Count II) alleges First Horizon's merger with Iberiabank and the parties' conduct thereafter formed the contract, whereas the breach of contract claim (Count III) alleges First Horizon breached specific provisions of the disputed banking agreements. *Compare* Compl. ¶ 94 with Compl. ¶ 101.

Importantly, these failures by First Horizon forming the basis for RKPA's contract claims are not inconsistent with Article 4A. They occurred prior to, and are independent of, the wire transfer authorization framework governed by Article 4A. A bank's obligation not to hand a customer's User ID to a bad actor, to maintain secure online banking platforms, and to follow proper identity-verification steps before issuing security tokens, do not alter the risk allocation for processing payment orders under Article 4A. These obligations exist apart from any payment order even being placed.

Finally, First Horizon argues that RKPA's breach of contract claim (Count III) fails, "to the extent [it] relies on the confidentiality provisions of the TMSMA or Depositor Agreement," because "those allegations are inextricably intertwined with the wire transfer fraud at issue and cannot be severed from the Article 4A framework." Mot. at 10. But First Horizon fails to explain where in Article 4A a bank's obligation to protect customer information is governed. Federal regulations and common law create those obligations and duties, not Article 4A. This passing argument by First Horizon is simply a conclusory characterization without citation to any authority. Neither of RKPA's contract claims are preempted by Article 4A.

**2. Negligence (Count IV)**

Similar to the contract claims, First Horizon generically argues that RKPA's negligence claim is "devoid of the kind of wholly separate transactions or promises that Florida courts have found necessary to move a case outside of UCC Article 4A and its controlling provisions regarding unauthorized fund transfers." Mot. at 11.

Not so. RKPA's complaint details First Horizon's negligent conduct separate and apart from its processing of payment orders. For example, the complaint details First Horizon's claim that it monitors all data traffic to ensure only known users can gain access to its online banking platform, that its security measures comply with federal law, and that its employees recognize customer voices and watch patterns of business activity to prevent fraud. Compl. at ¶¶ 36-38. But in reality, First Horizon does none of that. As the complaint alleges, First Horizon operates a substandard online banking platform easily exploitable by bad actors that comes with a tutorial

found on First Horizon's website describing how it works. *Id.* at ¶¶ 45-47.[2] The online banking platform lacks multifactor authentication, displays User IDs to anyone with access to a code sent to an email, text, or phone number, and allows password changes without further identifying information. *Id.* at ¶ 48. And, while it supposedly monitors data traffic to ensure access by only known users, the online banking platform allowed the Threat Actor—for hours—to log in and out of the RKPA Bank Account from multiple unknown IP addresses that geolocated to Chicago, IL, even though RKPA is located in Palm Beach, FL. Compl. at ¶ 62. During that time, and before any payment orders were initiated, the Threat Actor made multiple changes to the RKPA Bank Account. *Id.*

The complaint also details how First Horizon employees do not recognize customer voices or patterns of business activity. The Threat Actor who called First Horizon seeking a new RSA token sounds nothing like Guy Rabideau and even referred to the RKPA Bank Account number as "**their** account number." *Id.* at ¶¶ 52, 55 (emphasis in original). The verification questions asked of the Threat Actor sought basic information found on checks and included the User ID that First Horizon itself had already provided to him. *Id.* at ¶ 59. These allegations go well beyond the "bank mishandled unauthorized wire transfer requests" line of cases that First Horizon relies on (*see* Mot. at 11-12), and these failures all occurred *before* any Fraudulent Wire Transfers were executed.

In addition, *after* RKPA notified First Horizon of the fraud and spoke with its employees, First Horizon failed to act and protect the RKPA Bank Account. More specifically, RKPA notified First Horizon at approximately 10:00 a.m. EST on January 29, 2026. Compl. at ¶¶ 68-69. At that

---

[2] Notably, it appears First Horizon has removed the tutorial from its website following RKPA's initiation of litigation in this matter.

time, RKPA was told its account was flagged for fraud. *Id.* at ¶ 69. But with several more hours remaining in the business day to protect the RKPA Bank Account, First Horizon failed to do so. By the close of business on January 29, First Horizon released $17,276,700 from the RKPA Bank Account despite flagging the account for fraud. *Id.* at ¶ 1.

Cases cited by First Horizon draw this same line, distinguishing between negligence claims that rest solely on the unauthorized nature of a funds transfer (preempted) and negligence claims that rest on independent conduct such as lack of care in account openings and access, and failure to act following notification of fraud (not preempted). These non-preempted claims are analytically distinct from the funds-transfer authorization process of Article 4A. *See, e.g., Anderson v. Branch Banking & Trust Co.*, 119 F. Supp. 3d 1328, 1357-58 (S.D. Fla. 2015) (cited in Mot. at 11-12) (denying summary judgment because "Plaintiffs' accusations with respect to Bank Atlantic's lack of care exceed simple objections to unauthorized funds transfers. Instead, they extend to the imprudent handling of the account openings."); *Kazak*, 692 F. Supp. 3d at 1118; *see also Gilson v. TD Bank*, N.A., 2011 WL 294447, at *9 (S.D. Fla. Jan. 27, 2011) ("Because the crux of Plaintiffs' negligence claim is TD Bank's lack of care during the account openings, not the wire transfers, the Court finds that the negligence claim does not create rights, duties, and liabilities *inconsistent* with those stated in Article 4A, which governs only wire transfers.") (italics in original).

Simply put, RKPA's negligence claim does not rest solely on whether a particular payment order was "authorized" within the meaning of Article 4A. It rests on numerous failures by First Horizon separate and apart from that question. RKPA's negligence claim is therefore not preempted by Article 4A.

### C. RKPA's Contract Claims Are Properly Pled in the Alternative and the TMSMA does not preclude RKPA's Implied-in-Fact Contract Claim

RKPA properly pled its breach of implied-in-fact contract claim (Count II) and its breach of contract claim (Count III) in the alternative. Rule 8(d)(2) expressly permits this. It allows a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically," and provides that "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Pleading alternative contract claims is a routine and permissible pleading strategy, particularly here, where the existence and operative terms of a written agreement are in dispute. *See Coast to Coast Supply Solutions, LLC v. Bank of Am., Co.*, 2020 WL 2494487, at *2 (M.D. Fla. May 14, 2020) (denying bank's motion to dismiss breach of implied-in-fact contract claim pled in the alternative to a breach of contract claim because Rule 8(d) allows such alternative pleading).

First Horizon's Motion does not grapple directly with Rule 8(d)(2)'s alternative pleading structure. Instead, it treats the TMSMA as though its authenticity and operative effect were conceded, which they were not. First Horizon makes this argument in two ways. First, it says that because RKPA signed the Services Authorization, RKPA has "contractually agreed to be bound" by the TMSMA. Mot. at 8. Second, First Horizon claims that RKPA's execution of wire transfers constitutes acceptance of the TMSMA. *Id.* at 8-9. But these arguments fail because First Horizon is cherry picking language from the Services Authorization and ignoring facts clearly alleged in the complaint. For instance, First Horizon claims the TMSMA is binding because the Services Authorization says "[c]lient hereby agrees to be bound by the TM Service Agreement," but First Horizon conveniently omits the rest of that sentence which says the TMSMA is applicable "to each Service for which Client has enrolled." Compl. Ex. 1. RKPA expressly alleges that it was

never enrolled in First Horizon's wire transfer service. *See* Compl. ¶¶ 31-32, 84. In addition, the Services Authorization was signed in April 2023, and the unsigned TMSMA, which First Horizon claims has self-executing language, is dated in October 2024. Another fact First Horizon conveniently overlooks.

At bottom, First Horizon's motion is asking the Court to find the TMSMA binding—a fact that is in dispute—on a motion to dismiss, and without the parties engaging in discovery. This request by First Horizon is improper and should be rejected because a motion to dismiss "is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co.*, 2009 WL 10671157, at *2.

### D. RKPA's Negligence Claim Is Sufficiently Alleged and is Not Barred by the Independent Tort Doctrine

First Horizon also argues that RKPA's negligence claim fails because it alleges "duties that do not exist under Florida law" and "is barred by the independent tort doctrine." Mot. at 10. Both of these arguments are without merit.

In support of its argument that RKPA alleges no duty, First Horizon cites inapposite case law addressing a fundamentally different category of conduct: a bank's passive failure to detect fraud through periodic account review or transaction monitoring. *See* Mot. at 12-13 (citing *RV Kountry v. Truist Bank*, No. 24-CV-0036-JLB-NPM, 2025 WL 744271, at *5 (M.D. Fla. Mar. 7, 2025) (dismissing 7-page complaint alleging no facts beyond general failure to monitor and investigate transactions); *Lawrence v. Bank of Am., N.A.*, 455 Fed. Appx. 904, 907 (11th Cir. 2012) (Ponzi scheme case alleging bank should have known transactions were atypical); *Lynne M. Bucklin v. Bank of Am., N.A.*, No. 24-CV-278-JLB-NPM, 2025 WL 1504043, at *9 (M.D. Fla. Mar. 11, 2025) (dismissing complaint alleging only that bank knew or should have known

customer was elderly victim of fraud when she made in-person wire transfers); *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 548-49 (Fla. 2d DCA 2003) (Ponzi scheme case dismissing breach of fiduciary duty claim alleging mere failure to investigate how money was being spent by account holder); *Cheese & Grill Rest., Inc. v. Wachovia Bank, N.A.*, 970 So. 2d 372, 373-74 (Fla. 3d DCA 2007) (check cashing case where evidence showed plaintiff's losses were an "inside job" by plaintiff's own employee)).

Unlike these cases, RKPA's allegations go well beyond that First Horizon merely failed to monitor the RKPA Bank Account. As noted above in Section III(B)(2), RKPA alleges that First Horizon specifically claimed it provided secure systems and data monitoring to prevent fraud, and that its employees recognized customer voices and watched customers' business patterns to prevent fraud. First Horizon owed RKPA a duty of reasonable care to, among other things, properly identify and verify callers requesting account action (including RSA token issuance), monitor the RKPA Bank Account for fraud and take action upon detection, and not reveal RKPA's confidential customer information to third parties. First Horizon breached its duties by maintaining a substandard online banking platform, disclosing Guy Rabideau's User ID to the Threat Actor, issuing an RSA token to the Threat Actor following verification failures, allowing unauthorized account access and account changes, and failing to act as promised when it claimed it flagged the RKPA Bank Account for fraud. In addition, these breaches proximately caused RKPA's damages. *See* Compl. at ¶ 111. Accordingly, RKPA's complaint sufficiently alleges each element of negligence under Florida law. *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (holding that elements of negligence under Florida law are duty, breach, proximate cause, and damages, and that duties can "aris[e] from the general facts of the case") (citation omitted); *Gilson*, 2011 WL 294447, at *9 (denying summary judgment where the bank "deviated from its

standard account opening procedures" and "failed to notice inconsistencies," and because the crux of the negligence claim was the bank's "lack of care during the account openings").

First Horizon's reliance on the independent tort doctrine fails for the same reason its preemption argument fails: the doctrine bars only tort claims that are, in substance, a restatement of a contractual breach with no independent basis. *See Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399, 401-02 (Fla. 2013). To make its argument, First Horizon relies heavily on *Dickson v. Wells Fargo Bank, N.A.*, 812 F. Supp. 3d 1281 (S.D. Fla. 2025). But *Dickson* is not instructive. The *Dickson* court found that plaintiff's negligence claim was barred by the independent tort doctrine because it alleged only that the bank failed "to provide a commercially reasonable security method against unauthorized payment orders," and did not allege "any independent tortious conduct." *Dickson*, 812 F. Supp. 3d at 1286. Here, however, the duties alleged by RKPA relate to security and verification failures from *before* any payment orders were received by First Horizon, as well as the failure to act as promised *after* RKPA notified First Horizon of the fraud and it claimed the RKPA Bank Account was properly flagged. *See supra* III(B)(2). These duties are distinct from the mechanics of First Horizon's processing of any payment orders.

First Horizon attempts to bolster its independent tort doctrine argument by mischaracterizing RKPA's pleading, stating that RKPA "alleg[ed] it entered express written agreements . . . ." Mot. at 15. But as noted throughout this opposition, RKPA's complaint expressly denies that the TMSMA is binding, and the TMSMA's authenticity and operative effect cannot be resolved on a motion to dismiss. *See* Section III(C). Regardless, First Horizon's mischaracterization does not strengthen its argument because courts consistently recognize that a contract theory and negligence theory can proceed together "without running astray of the independent tort doctrine." *Coast to Coast Supply Solutions, LLC*, 2020 WL 2494487, at *2. And,

to the extent RKPA may ultimately need to elect between a negligence theory and a contract theory as litigation progresses, such an election is unnecessary and inappropriate at the pleading stage. *See id.*

**E. Dismissal of any Claim Should be Without Prejudice**

First Horizon's request to dismiss Counts II, III, and IV should be denied. If, however, the Court does grant dismissal of any claim, it should be without prejudice. Rule 15(a) directs that leave to amend be freely given when justice so requires. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Indeed, "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Id* (citation omitted). Leave should be denied only "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Dupree*, 252 F.3d at 1163.

Here, RKPA has never before amended its complaint in this matter, nor is there a question of delay, bad faith, or prejudice. First Horizon claims only that amendment would be futile. *See* Mot. at 16. But because this case is in its early stages and will continue regardless of the outcome of this Motion since First Horizon did not move against Count I, RKPA respectfully requests leave to amend should this Court find that any claim is deficient as currently pled.

**F. First Horizon's Answer to Count I is Necessary for Discovery**

In its Motion, First Horizon requests a stay and extension of time to answer Count I of the complaint. Mot. at 2, n. 1. The Court should deny that request. Discovery is moving forward while the Motion is pending. For RKPA to properly and effectively frame its discovery requests, it must know First Horizon's responses and defenses to Count I. Without First Horizon's answer to Count

I, RKPA is prejudiced and will be disadvantaged when conferring with First Horizon concerning its objections and responses to RKPA's discovery requests. While courts do allow defendants to delay answering uncontested claims while a partial motion to dismiss is pending, RKPA requests that this Court deny First Horizon's request to do so here. *See Matter v. Clearlake Village Homeowner's Ass'n, Inc.*, No. 19-CV-777-ORL-31TBS, 2019 WL 2869060, at *2 (M.D. Fla. July 3, 2019) (noting that a party's filing of "a partial answer before a partial motion to dismiss is filed or while it is pending serves its goal of efficient litigation").

**CONCLUSION**

For the foregoing reasons, RKPA respectfully requests that this Court deny First Horizon's Motion to Dismiss Counts II, III, and IV in its entirety, including First Horizon's request to extend and stay its time to answer Count I, together with such other and further relief as the Court deems just and proper.

Dated: August 28, 2026

**HODGSON RUSS LLP**
*Attorneys for Plaintiff Rabideau Klein, P.A.*

By: _*s/ Anthony R. Yanez*_
Anthony R. Yanez
Patrick E. Fitzsimmons (*pro hac vice*)
440 Royal Palm Way, Suite 202
Palm Beach, Florida 33480
(561) 656-8017
*ayanez@hodgsonruss.com*
*pfitzsimmons@hodgsonruss.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 28th day of August, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the attorneys and parties of record.

By: _*s/ Anthony R. Yanez*___________
Anthony R. Yanez