**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No.: 9:26-cv-80810-EA

RABIDEAU KLEIN, P.A.,

Plaintiff,

v.

FIRST HORIZON BANK,

Defendant.
_______________________________________/

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS II, III, AND IV OF PLAINTIFF'S COMPLAINT**

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

David B. Levin
Florida Bar No. 26394
dlevin@bakerdonelson.com
Spencer D. Leach
Florida Bar No.: 110753
sleach@bakerdonelson.com
Aldo M. Leiva
Florida Bar No. 116424
aleiva@bakerdonelson.com
200 East Broward Blvd., Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 768-1600
Facsimile: (954) 333-3930

Kristine L. Roberts
Admitted *pro hac vice*
klroberts@bakerdonelson.com
W. Preston Battle IV
Admitted *pro hac vice*
pbattle@bakerdonelson.com
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
Facsimile: (901) 577-2303

*Counsel for Defendant First Horizon Bank*

First Horizon Bank ("First Horizon") submits this Reply to Plaintiff Rabideau Klein, P.A.'s ("Plaintiff" or "RKPA") Response and Memorandum in Opposition to First Horizon's Partial Motion to Dismiss. ("Response," ECF No. 15; "Motion to Dismiss," ECF No. 7.)

## I. **<u>ARGUMENT</u>**

Plaintiff's Response confirms what is already in its Complaint—that RKPA's claimed losses began with RKPA. The Response recounts from the Complaint how an unknown threat actor ("Threat Actor") gained unauthorized access to an RKPA email account through a phishing scheme, contacted RKPA's telephone provider to redirect RKPA's phone lines to the Threat Actor's own number, and allegedly exploited First Horizon's security procedures to access RKPA's attorney trust account at First Horizon to "accomplish his theft." (ECF No. 15, pp. 2, 5-6.) According to the Complaint, the theft was sending thirteen unauthorized wire transfers (the "Fraudulent Wire Transfers") from RKPA's attorney trust account. (*Id.* at p. 2.) Incredibly, RKPA's Response argues that none of these allegations against First Horizon—RKPA's allegedly falling prey to disclosing security details and First Horizon having a "substandard banking platform which the bad actor exploited to accomplish his theft"—are within the scope of Florida's UCC Article 4A and are, therefore, not preempted by the statute. However, a plain reading of Florida's UCC Article 4A and well-established Florida case law shows that Plaintiff's attempts to reframe the allegations above as "independent" of First Horizon's security procedures for wire transfers are meritless.

RKPA's Response relies on three fatally flawed arguments: (1) that the Court cannot consider the Treasury Management Services Master Agreement ("TMSMA"); (2) that RKPA's claims fall outside UCC Article 4A; and (3) that contractual banking obligations can be recast as

tort duties.[1] None succeeds. RKPA's own *signed* Services Authorization, attached to the Complaint as Exhibit 1, expressly incorporates the TMSMA, and its allegations confirm years of use of the very services that agreement governs. The common law claims arise from conduct squarely governed by Article 4A, and the tort duties RKPA alleges are indistinguishable from the parties' contractual obligations. Accordingly, Counts II, III, and IV should be dismissed with prejudice.

**A. <u>RKPA's Authenticity Challenge to the TMSMA Fails</u>.**

RKPA's threshold argument is that the unsigned TMSMA cannot be considered because its "authenticity" is in dispute. (ECF No. 15, p. 7.) However, this conflates two distinct concepts and should be rejected at the outset. The Services Authorization, which RKPA signed on April 18, 2023, and attached to its own Complaint as Exhibit 1, provides: "Client hereby agrees to be bound by the TM Service Agreement," and states that "[t]he Enrollment Form, the TM Service Agreement and all amendments and addenda thereto, are incorporated herein and deemed part of this Master Agreement." (ECF No. 1-1, Ex. 1.) This is not an extrinsic document of questionable provenance; it is the express language of RKPA's own signed exhibit attached to its own Complaint. RKPA cannot sign a document incorporating the TMSMA by reference and then disclaim the incorporated agreement on a motion to dismiss.

RKPA conflates "unsigned" with "inauthentic." Under *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002), the incorporation-by-reference doctrine requires that a document be (1) central to the plaintiff's claim and (2) of undisputed authenticity. RKPA does not dispute that the

[1] The Statement of Facts in RKPA's Response also improperly contains a string citation of separate lawsuits that are neither cited in nor related to RKPA's Complaint and have no relevance to RKPA's claims for breach of implied-in-fact contract, breach of express contract, or negligence. Accordingly, the Court should disregard or strike RKPA's mention of "multiple lawsuits pending against First Horizon alleging similar conduct" and string citation that follows on page 4 of Plaintiff's Response. (ECF No. 15, p. 5.)

TMSMA attached to the Motion is a genuine First Horizon document. What RKPA disputes is the TMSMA's operative effect—i.e., whether RKPA is legally bound by its terms. That is a legal conclusion, not a challenge to authenticity under *Horsley*. RKPA seeks to use its fatally flawed authenticity argument to exclude a document that its own signed exhibit incorporates.

Moreover, *Kazak v. Truist Bank*, 692 F. Supp. 3d 1112 (M.D. Fla. 2023), on which RKPA relies, is distinguishable on its own terms. In *Kazak*, the court refused to consider account agreements because they were unsigned and "it was unclear when the plaintiff may have agreed to them." *Id.* at 1117-18. In other words, there was no signature **and** no discernible timeline of assent. Here, neither situation applies. RKPA signed the Services Authorization on April 18, 2023, and that document expressly states, "Client hereby agrees to be bound by the TM Service Agreement." (ECF No. 1-1, Ex. 1.) The mechanism and timing of RKPA's assent are established on the face of RKPA's own Exhibit 1. Furthermore, the incorporation clause encompasses the TMSMA "and all amendments and addenda thereto." RKPA's argument that the TMSMA was "created in October 2024" is a subtle mischaracterization: the footer reads "REV 10/24," indicating a revision, not creation. (*See* ECF No. 7-1.) Regardless, the Services Authorization's forward-looking incorporation language was designed to encompass precisely this kind of subsequent amendment.

RKPA's own alleged conduct independently confirms acceptance. The TMSMA provides that "the use of a Service shall, without any further action or execution of any documentation on the part of Client, constitute Client's acceptance of this Agreement and all terms and conditions governing the use of such Service." (ECF No. 7-1, TMSMA § 2.) RKPA's Complaint alleges it "continued to operate its law practice and send wire transfers as it previously did, using Defendant's online banking platform" after signing the Services Authorization. (ECF No. 1-1, ¶

33.) RKPA cannot allege years of use of First Horizon's services and simultaneously disclaim the agreement governing those services.

RKPA's selective reading of the Services Authorization ignores the TMSMA's two-tier structure. RKPA argues the TMSMA applies only "to each Service for which Client has enrolled" and that RKPA was "never enrolled" in wire transfer services. (ECF No. 15, pp. 15-17.) This argument misinterprets the TMSMA's structure. The TMSMA distinguishes between General Terms and Conditions, which apply to all treasury management services, and Service Terms and Conditions, which apply only to specific enrolled services. The qualifying phrase "to each Service for which Client has enrolled" limits which Service Terms apply—it does not limit whether the General Terms are binding. RKPA, however, undisputedly used First Horizon's online banking platform—to effectuate wire transfers. (ECF No. 1-1 at ¶ 33.) Thus, the General Terms and Conditions, including security procedures (TMSMA § 6), client internal security controls (TMSMA § 7), and confidentiality (TMSMA § 12), apply to RKPA. Every duty RKPA's Complaint targets (security, confidentiality, monitoring) is expressly addressed in the General Terms and is subject to Florida's UCC Article 4A.

## B. <u>Florida's Article 4A Preempts Plaintiff's Claims Based on Contract and Negligence</u>.

### 1. The Alleged "Pre-Wire Transfer" Conduct Is Indistinguishable from Article 4A.

RKPA's central strategy is to recharacterize its allegations as arising from conduct "separate and apart" from the mechanics of the Fraudulent Wire Transfers. (*See generally* ECF No. 15, pp.9-18.) However, this framing fails because UCC Article 4A's scope is not limited to the very **<u>instant</u>** a payment order is processed. By its own terms, UCC Article 4A governs the **<u>entire</u>** security-procedure framework that banks and customers use to verify and authenticate payment orders, including the processes for issuing and managing security credentials that authorize wire transfers. *See* Fla. Stat. §§ 670.201-670.204. The issuance of an RSA token is not

a freestanding, ancillary service—it is the mechanism by which wire transfers are authorized. Every step RKPA complains of in the Complaint—the password reset, the RSA token reissuance despite an audible voice mismatch and use of odd language, and the subsequent wire initiation—is part of a single, continuous authentication and authorization chain that Article 4A was designed to govern and the common law cannot displace. (*See* ECF No. 1-1, ¶¶ 52, 55-59.) RKPA's temporal framing would produce the absurd result that a bank's security-procedure obligations under Article 4A begin only at the moment a payment order is submitted, leaving everything that enables submission outside the statute's reach. Indeed, Florida's codification of Article 4A defines a "security procedure" as "a procedure established by agreement of a customer and a receiving bank for the purpose of (a) verifying that a payment order or communication amending or cancelling a payment order is that of the customer." Fla. Stat. § 670.201. The RSA token, the User ID, and the password—which Plaintiff's Response argues falls outside of Article 4A—all exist for the sole purpose of verifying that a payment order is that of the customer. Excluding the issuance and management of these credentials from Article 4A's scope would gut the statute's core function and render its security-procedure framework a nullity.

RKPA's own pleading confirms this nexus. The Complaint alleges the Threat Actor obtained credentials "for purposes of sending the Fraudulent Wire Transfers" and that the RSA token was needed to authorize those transfers. (ECF No. 1-1, ¶ 2.) RKPA cannot simultaneously allege in Count I that the security procedures governing wire transfer authorization were deficient and then allege in Counts II-IV that the *same* conduct constitutes an independent wrong outside Article 4A's scope. (*See* ECF No. 1-1, ¶¶ 78-92.) Further, RKPA's allegations that First Horizon allowed the Threat Actor to log in from unknown IP addresses, change passwords, and modify account settings are all complaints about the adequacy of the security procedures used to verify

authorized users of the wire transfer system. These are precisely the "rights, duties and liabilities" that Article 4A was "intended to be the exclusive means of determining." *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274 (11th Cir. 2003). In the absence of any allegations concerning conduct outside the security procedures that allegedly effected the Fraudulent Wire Transfers, Plaintiff's Response fails to spare Counts II-IV from Article 4A preemption.

**2. Plaintiff Misconstrues the Authorities Addressing Article 4A's Scope.**

Notably, RKPA's Response selectively quotes *Regions Bank* while omitting its dispositive limitation. The Response emphasizes the proposition from *Regions Bank* that Article 4A is not the "exclusive means" of redress but ignores its holding that "resort[ing] to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." *Id.* at 1275. RKPA's common law claims seek to impose security-procedure, authentication, and fraud-monitoring duties that are the precise subject matter of Article 4A's commercially reasonable security procedure framework and that directly conflict with the risk allocation set forth therein. Without anything more in the Complaint other than vague, improper references to unrelated incidents that neither involved RKPA nor are connected in any way to Counts II-IV, (*see* ECF No. 15, p. 4), Counts II-IV should be dismissed with prejudice.

Regarding preemption, Plaintiff again relies on *Kazak*, but the analysis of the allegations in that case supports First Horizon's Motion to Dismiss, not RKPA's Response. In *Kazak*, the court denied dismissal because the plaintiff alleged the bank made a specific, affirmative promise to lock the account and terminate wire transfers, which the bank then breached. *Kazak*, 692 F. Supp. 3d at 1118. That allegation (i.e., that there was an independent undertaking *beyond* the wire transfer process) is absent from RKPA's Complaint. Rather, the Complaint alleges only that an employee was "told" the account was flagged for fraudulent activity (ECF No. 1-1, ¶ 69)—not that First Horizon promised to lock the account or definitively would stop wire transfers and then breached

those promises. However, the Response emphasizes that First Horizon "flagged the RKPA Bank Account for fraudulent activity" by approximately 10:00 a.m. on January 29, 2026, yet still allegedly released certain wire transfers. (ECF No. 15, pp. 13-14.) RKPA characterizes this as First Horizon "failing to act as promised" (*Id.* at p. 17), implicitly equating a fraud flag with an affirmative promise to lock the account. There is a significant difference between being informed that an account is flagged and being *promised* that specific protective action will be taken—distinguishing this case from *Kazak*, where the bank affirmatively committed to "lock the account and terminate the wire transfers," and then failed to do so. *Kazak*, 692 F. Supp. 3d at 1118.

RKPA's citation to *Gilson v. TD Bank, N.A.*, 2011 WL 294447 (S.D. Fla. Jan. 27, 2011), is equally unavailing. In *Gilson*, the court found negligence claims not preempted because "the crux of Plaintiffs' negligence claim is TD Bank's lack of care during the account openings, not the wire transfers." *Id.* at *9. *Gilson* involved the fraudulent opening of new accounts using forged signatures and improper authorization—conduct categorically separate from wire transfers—whereas, RKPA's allegations concern authentication credentials on an existing account used to authorize wire transfers, which is the precise subject matter Article 4A governs. *See* Fla. Stat. § 670.201 (defining "security procedure" as a method for "verifying that a payment order . . . is that of the customer"). Unlike *Gilson*, RKPA cannot separate the alleged misconduct from the wire transfer authorization process.

**C. <u>Article 4A Preempts Plaintiff's Implied and Express Contract Claims</u>.**

RKPA fails to offer a single explanation of how the contractual duties it alleges—commercially reasonable security procedures, authentication of callers, fraud monitoring—differ from the duties Article 4A governs. The Motion to Dismiss did not "generalize" RKPA's allegations; it identified the specific duties alleged in the Complaint (ECF No. 7, pp. 7, 9-10) and explained that each corresponds to an Article 4A obligation. (*Id.*) RKPA's Response dismisses

First Horizon's preemption argument as "conclusory," but fails to explain how any of these duties falls outside Article 4A's scope.

The Response's discussion of case law fails to help its cause. RKPA's citation to *Yel Co. Insurance v. Truist Bank*, 2026 WL 717175, at *3 (S.D. Fla. Feb. 19, 2026), for the proposition that implied-in-fact and express contracts share the same elements is a correct but irrelevant statement of law. Under Florida law, an implied-in-fact contract theory cannot lie where express written agreements cover the same subject matter. *See Shamy v. Shovel Ready Projects, LLC*, 433 So. 3d 798 (Fla. 4th DCA 2026). The relevant question is whether the express written agreements cover the same subject matter as the implied contract RKPA alleges—and they indisputably do.

As demonstrated above, each act RKPA lists—the online banking platform, the User ID disclosure, the RSA token issuance, and the account access—is part of the single authentication chain governed by Article 4A. RKPA's own Complaint even confirms the Threat Actor obtained these credentials "for purposes of sending the Fraudulent Wire Transfers." (ECF No. 1-1, ¶ 1.) Thus, characterizing these events as "unrelated to the mechanics of the Fraudulent Wire Transfers" disingenuously ignores the Complaint's own allegations, and Counts II and III therefore fail.

**D. <u>The Independent Tort Doctrine Further Bars Plaintiff's Negligence Claim</u>.**

RKPA correctly recites the standard from *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399, 401-02 (Fla. 2013): a tort claim survives only if the duty it invokes has a basis independent of the contractual relationship. But RKPA's Complaint fails to satisfy this standard. Every duty it asserts—authentication and verification of callers, security procedures for the online banking platform, fraud monitoring, protection of confidential information—arises from and is defined by the bank-customer relationship. Under Florida law, that relationship is inherently contractual. *MJZ Corp. v. Gulfstream First Bank & Tr., N.A.*, 420 So. 2d 396, 397 (Fla. 4th DCA 1982) ("[T]he relationship between a bank and its depositing customer is contractual."). Strip away

RKPA's banking relationship with First Horizon, and there is no alleged duty. RKPA's negligence claim fails on that basis alone.

RKPA's attempt to distinguish First Horizon's cited authorities in support of the independent tort doctrine mischaracterizes their holdings. RKPA attempts to discredit *RV Kountry v. Truist Bank*, No.: 2:24-cv-0036-JLB-NPM, 2025 WL 744271 (M.D. Fla. 2025), and the related cases as addressing only "passive failure to detect fraud through periodic account review." (ECF No. 15, p. 16.) But *RV Kountry* held broadly that "Florida law does not impose a duty on a bank to investigate fraudulent transactions." *Id.* at *5. That holding encompasses RKPA's allegations about verifying callers, protecting User IDs, and maintaining platform security. *Dickson v. Wells Fargo Bank, N.A.*, 812 F. Supp. 3d 1281, 1286-87 (S.D. Fla. 2025), likewise held that negligence claims stemming from contractual duties were barred because they were based on the contractual customer relationship, not independent tortious conduct. RKPA's attempt to narrow *Dickson* to claims about "commercially reasonable security" therefore fails.

RKPA invokes *Coast to Coast Supply Solutions, LLC v. Bank of Am., Co.*, No.: 8:20-cv-606-T-60AEP, 2020 WL 2494487 (M.D. Fla. 2020), for the proposition that contract and negligence theories can "proceed together" and that election of remedies is premature at the pleading stage. This conflates two distinct doctrines. The independent tort doctrine is not an election-of-remedies rule—it is a substantive bar that applies at the pleading stage. *Tiara Condo.*, 110 So. 3d at 401-02. *Coast to Coast* held only that contract and tort claims can coexist where the tort duty is independent of the contractual duty. That is the question, not the answer. RKPA has identified no duty independent of the banking relationship. If the tort claim is merely a restatement of contractual duties with no independent basis, it fails on the pleadings—regardless of when remedies are elected. Count IV should therefore be dismissed.

Lastly, RKPA's Response is entirely silent on a critical fact save one passing mention: RKPA elected to forego dual-approval controls for wire transfers "[d]espite the recommendation of Bank," expressly acknowledged that "having only one user for entitlements or transactions may increase the risk of loss," and "release[d] Bank from any responsibility or liability for same." (ECF No. 1-1, ¶ 32; Ex. 2.) RKPA's failure to address this concession is telling. It cannot characterize First Horizon's security as "substandard" when RKPA itself voluntarily declined the very safeguard—dual-user approval—that would have prevented a single compromised credential from authorizing wire transfers. This release independently defeats Count IV: the duty RKPA alleges and the causation it claims are both negated by RKPA's own contractual election.

**E. <u>Dismissal of Counts II-IV Should Be With Prejudice</u>.**

RKPA requests leave to amend, arguing this case is in its early stages, but each deficiency identified in the Motion is a legal bar. No additional factual pleading can overcome a legal bar. Therefore, RKPA's request for an amendment is futile and should not be permitted. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

**F. <u>First Horizon is Entitled to a Brief Stay in Filing an Answer to Count I</u>.**

RKPA opposes First Horizon's argument in support of a stay and extension of time to answer Count I. (ECF No. 15, pp. 20-21.) Federal courts in Florida routinely permit defendants who file partial motions to dismiss to stay their answer on unchallenged counts pending the court's ruling. (*See* ECF No. 7, pp. 1-2.) Further, the Court's ruling may substantially narrow or reshape the scope of this case, making a stay the efficient course.

## II. <u>CONCLUSION</u>

For the foregoing reasons, Defendant First Horizon Bank respectfully requests that this Court dismiss Counts II, III, and IV of the Complaint with prejudice and grant a brief stay of responding to Count I of the Complaint pending resolution of the Partial Motion to Dismiss.

Submitted September 17, 2026.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
200 East Broward Blvd., Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 768-1600
Facsimile: (954) 333-3930
*Counsel for Defendant, First Horizon Bank*

By: */s/ David B. Levin*
David B. Levin
Florida Bar No. 26394
dlevin@bakerdonelson.com
Spencer D. Leach
Florida Bar No.: 110753
sleach@bakerdonelson.com
Aldo M. Leiva
Florida Bar No. 116424
aleiva@bakerdonelson.com

Kristine L. Roberts
Admitted *pro hac vice*
klroberts@bakerdonelson.com
W. Preston Battle IV
Admitted *pro hac vice*
pbattle@bakerdonelson.com
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
Facsimile: (901) 577-2303

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2026, I served a copy of the foregoing electronically via CM/ECF to all parties/attorneys on the list to receive notice in this case, including but not limited to the following:

Anthony R. Yanez, Esq.
**Hodgson Russ LLP**
440 Royal Palm Way, Suite 202
Palm Beach, Florida 33480
ayanez@hodgsonruss.com
abard@hodgsonruss.com
courtmail@hodgsonruss.com

*/s/ David B. Levin*